TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Radcliffe B. Lewis<br>    Plaintiff Pro Se<br><br>V<br><br>District of Columbia<br><br>And<br><br>The United States of America<br>    Defendants | Case No.: 1:07-697 rjl |

## REFILED COMPLAINT

This Court provided Plaintiff Radcliffe B. Lewis an opportunity to respond to Defendant United States' motion to dismiss for a more definate statement by refiling the Complaint.[1] The accompanying pages are intended to so provide. The Action is amended to encompass in scope, claims, an in terms of reliefs sought, the entirety of known claims regardless of venue. F.R.C.P. 8 applies. Plaintiff focuses only on the activities of the defendants stipulated above.[2]

The Court should not that Defendant District of Columbia has yet to respond or entered any counsel to appear.

                                                 9/25/07
                              _____Sign_____
                              Radcliffe B. Lewis, Plaintiff Pro Se
                              1901 15th St. NW #4
                              Washington, DC 20009

Encl: 8 Pages

---

[1] This is from recollection as at this writing Lewis does not have a copy of this Court's Order in front of him from which to quote.

[2] The Court's Order did not address (it seems) the Social Security Administration, which Plaintiff may address in a separate document.

TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
333 Constitution Avenue NW. Washington, DC 20001

| | |
|---|---|
| Radcliffe Bancroft Lewis, Pro Se \|<br>*Plaintiff,* \|<br>\|<br>vs. \|<br>\|<br>~~Case No.: 1:07 - cv - 697-rjl~~<br>District of Columbia \|<br>\|<br>And \|<br>\|<br>The United States of America \|<br>*Defendants* \|<br>\| | Case N: 1:07-cv 697 rj'l |

## REFILED COMPLAINT

(In keeping with the last order of this Court.)

### I. PROTOCOLS

The parties are named in this action in keeping with this Court's order of 11 July 2007.

This is a civil action for Libel

Based upon the Civil Cover Sheet available in this court, the nature of suit is TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION

Otherwise the suit is classifiable as a Pro Se General Civil action with a cause of action being that of Libel

### ii. Preliminary Statement

A. This instant complaint stems from an ongoing dispute between the defendants and Lewis. Notably, from not later than 28 January 204 to the present time, the District of Columbia engaged a very coy scheme to label Lewis as one who is not credible, not to be contracted with, and not worthy of engaging investigations for pay under its CJA program. The District of Columbia (hereto hence "District') did this by abruptly denying him certification as an investigator under the defendants' administered CJA Program. When Lewis appealed the abrupt denial, the District then denied him access to affirmative redress of his claims. The District also was not able to justify to Lewis its demand that he provide a driver's license or non-drivers license in order to continue to work as an investigator, even though it did not require this of anyone else in the system. When Lewis attempted to ferret out the process of redress,

he eventually determined that he needed to file a discrimination claim against the District of Columbia, only to find that the District of Columbia had no available means by which Lewis could file such a claim regarding his contracted status except by way of either the Department of Labor for the United States (DOL) or the Office of Justice Programs in the Department of Justice (DOJ) of the United States. When Lewis attempted to file the discrimination complaint using the form outlined by the DOL, the DOL would not take it because according to one employee, it was "too long". When Lewis attempted to hand carry the complaint to the DOJ, he was informed by a police officer there that the DOJ would not accept hand delivered complaints because if it did there would be a lot of them. When Lewis attempted to find other means by which to file the complaint, the DOJ informed him there was no other way than to mail in the complaint, which incidentally was about 200 pages. But by this time the discrediting campaign against Lewis by the District of Columbia had rendered him extremely indigent. Moreover Lewis found information while developing his complaint to indicate that the policies of United States also contributed against Lewis to render him discredited based upon the fact that he became indigent. The District of Columbia however never indicated that the policies of the United States formulated the basis for their own discrediting scheme against him. Consequently

B. On 5 September 2006, Radcliffe Bancroft Lewis, in seeking consent for the filing of this Action commencing with an appeal for a mandamus order, contacted the Office of the General Counsel for the District of Columbia Courts by telephone to (202) 879-1010 and was directed to contact the "Office of the DA" at (202) 514-7566. Upon so calling, Lewis obtained consent to proceed in this manner, now adjusted with respect to the pleadings in full equity now to be acceptable by this Court.

C. Moreover, Lewis also attempted to submit the complaint by way of the Congress of the United States only to find the Congress developed a very overreaching law, where it defined all persons attempting to communicate with Congress as lobbyist, and issued to such individuals a computer disc with programs that they are to suppose to install in their computers, so that the Congress can maintain an audit of their communication with Congress. But since Lewis is too poor to have his own computer and is very dependent on public access terminals in order to writer letters and pleadings, this effectively barred him from talking to Congress about much of anything, especially in getting the Congress to perform oversight and administrative review of the activities of agencies within the District of Columbia.

D. Thus, this forum, a lawsuit in a federal court of equity, is the only venue left for Lewis to complain against the discrediting campaign that the District of Columbia has caused to be against Lewis.

### III. Particulars

A. On or about 4 April 2002, Lewis entered into a contractual agreement with the defendants as an investigator on behalf of indigent individuals charged with crimes and prosecuted within the judiciary branch of the Government of the District of Columbia, as ascribed by way of the various statutes governing the Criminal Justice Act.

B. Lewis met all requirements for being granted status as a "Certified CJA Investigator", (hereto hence "investigator").

C. On 28 January 2004, Lewis's membership as an active investigator with the DC Courts was abruptly terminated: specifically

1. On 28 January 2004 at about 11:43 am, Lewis entered the finance office of the DC Superior Court, which is tasked with processing vouchers payable to certified investigators. While in that office a person cam in and asked if anybody else is here to take pictures, for "CJA Investigators". Lewis, inquired as to what the pictures are for, but other investigators in the office recoiled from him in a muffled and hunched manner and quietly left the office and went upstairs the building. Lewis sought someone to ask the question and eventually seeing the payroll clerk (Wallace) again posed the question as to what the pictures are for. Wallace explained that the pictures were for the investigator identification cards, and instantly cordially invited Lewis upstairs.

2. Upon reaching the second floor Lewis was led to an office with a set of square tables arranged in a conference style, and a computer terminal. Wells was in the room and understanding that Lewis was there to have his picture taken, asked Lewis for an identification card. Lewis showed Wells his Library of Congress Identification card, but Wells indicated the identification was not acceptable. Wells indicated that it desired to see a driver's license and a social security card. Lewis informed Wells that he does not carry a driver's license and that his social security card was lost with his wallet a few days before. Lewis then asked Wells if Wells has Lewis's files, (as Lewis has previously provided significant identification and citizenship status of such files to Wells; Lewis had been a citizen of the United States since about 1995). Wells indicated that it did not have Lewis's files. Lewis then showed Wells his voter registration card, current investigator identification, and United States Veterans Affairs identification card, but Wells indicated that none of the cards were valid identification and that as to the latter, that it does "not know what that is."

Wells then demanded to see a "driver's license."

Lewis stated, "You will not see a driver's license until there is another payment from another voucher so that I may be able to pay the DMV for a driver's license."

Wells then said that it would allow Lewis to take the picture but that it must see a driver's license in order to acquire the new investigator identification card and Lewis agreed to this decision.

As Lewis was about to settle into the room with the other investigators to take the identification card picture, Wells, observing Lewis for about five or ten seconds then asked, "Do you still need to know what an ID is?"

Lewis responded, "Yes, and I need it in writing, what I really need to know from you, from the District of Columbia, and from the Federal Government is why the driver's license has become a national ID card, so that I can appeal it, because I believe this is a political issue, and it is a violation of my rights."

Wells then asked, "Do I need to call the Marshals?"

Lewis answered, "No, my understanding is you said you would allow me to take the picture, and show and identification later, and I comply with that decision, I just need the definition of identification so that I can appeal it."

Wells then indicated it would call the marshals because it felt threatened. It then stated in a low tone voice ('under its breath'), "You talked yourself out of that one."

Lewis then said, "You may feel threatened because I indicate I may take legal action, but nothing in my statements indicated that I have any intent to violate any of your rights."

Wells then began to leave the office in indicating it is going to fetch the marshals.

Wallace then suggested to Lewis to leave for the day in the interest of peace, and Lewis left, indicating he will appeal to the Chief Judge.

D. From then on, despite vigorous attempts to seek proper redress of the matter the District still refused to grant Lewis the status as "Certified CJA Investigator", to the detriment of Lewis.

## IV. PRELIMINARY INJUNCTIVE REQUESTS

A. Comes now Lewis to request for equitable cure so as to grant Lewis, full and unabridged access and all benefits and privileges associated with those who are considered certified "CJA Investigators" of the DC Courts.

Such order, if granted by this Court, would provide a peculiar relief to Lewis, by enabling him to continue his occupation as a Criminal Justice Act ("certified") investigator, pending resolution of this case, especially in light of the fact the action must be taken without the civil rights complaint being filed with the Department of Justice's Office of Justice Programs, and or, the Office of / for Civil Rights therein. The civil rights complaint and related claims are against the above defendants is of a complex nature in that regard, for such claims against the local defendants pertain to the CJA Program; yet this instant suit in equity consists of claims against the federal defendants, and the detailed matters therein must be sifted through a profound investigation of the facts and circumstances before alteration of the body of defendants may be tended to, be such in the increase or the decrease. [It is this profound investigation that is being denied here and warrants a cure of process of redress].

B. For the awarding of one hundred thousand (USD $100,000.00) dollars to Lewis for this damages incurred in terms of loss of property, time, and dignity as a result of the significant delay in is access to redress by the defendants.

## V. SUMMARY OF COUNTS

A.. Libel and or Slander – where the District of Columbia refuses to allow Lewis to remain under contract as an investigator by abruptly terminating his stats thereof without reason or cause.

B.. Defamation – where upon abruptly terminating his status the District of Columbia rendered Lewis as one who is not credible in front of a large body of lawyers, public defenders, and legal experts, whereby he has become the butt of

jokes in the law society of Washington, D.C.

C.. Obstruction of Justice, - pursuant to Section of the District of Columbia Bill of Rights – where the District of Columbia fails to provide redress of grievance to Lewis related to the abrupt termination of his occupation.

D. Obstruction of Justice – pursuant to Amendment 1 of the Constitution of the United States – where both the District of Columbia and the United States prohibited Lewis from any access to redress of grievance related to a civil rights complaint.

E. Obstruction of Justice – pursuant to Amendment 1 of the Constitution of the United States – where the Congress of the United States fails to provide adequate access to the redress for Lewis.

## VI. Reliefs Sought

a Declaratory Judgment indicated that Lewis is credible and that members of the public, governments, and other entities may contract with him – so as to countermand the libel and slander scheme of the District that Lewis is 'not credible'.

B. For this Court to cause the continued activation of Lewis's status as an investigator eligible for voucher payments for performing investigations assigned to and by the District of Columbia; in keeping with Section 20 of the DC Bill of Rights.

C. For this Court to cause to be an investigation of the civil rights complaint that Lewis has against the District of Columbia.

D. For this Court to cause the Congress of the United States to provide an access whereby individuals with justifiable claims do not have to lobby congress for their right to meaningful remedy, but for Congress to allow the forwarding of such redress to the appropriate committees of Congress without retribution against the individuals; and for the committees to be required to respond in some meaningful way.

5. For GENERAL DAMAGES in the amount of five million (USD $5,000,000.00) dollars in relation to the harm and significant loss of property, time, rights, and dignity suffered by Plaintiff at the hands of the District of Columbia.

5. For GENERAL DAMAGES in the amount of five hundred thousand (USD $500,000.00) dollars from both defendants for the abrogation of Plaintiff's right to remedy – the loss of property, time, rights, and dignity suffered thereby. (If awarded the $100,000.00) ordered at preliminary injunction to be deducted here from.

5. For this Court to cause the preservation of additional claims to be sought pending results of the civil rights investigation.

5. For such other relief as this Court may deem just and proper.

WHEREFORE, comes now Lewis as a

Respectfully submitted by,

Radcliffe Bancroft Lewis, Plaintiff, *Pro Se*
Email: rad_bancroft@hotmail.com

---

### Rule 4 Notice

I, Radcliffe Bancroft Lewis, hereby affirm under penalty of perjury that on this 25th day fo September, 2007, I caused this here-above stated **Complaint** to be delivered by way of hand delivery, the following:

The Secretary of the District of Columbia
1350 Pennsylvania Avenue
Washington, DC 20004

And to

The District of Columbia
Office of Risk Management
441 4th Street, NW
Washington, DC 20530

And to

The Office of the Attorney General for the District of Columbia
441 4th Street, NW, Suite 1060 N, Washington, DC, 20001

And to

The United States Attorneys Office
555 Fourth Street, NW (Room 10808)
Washington, DC 20530


Sigd:
R. Lewis, Radcliffe B. Lewis