TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Radcliffe Bancroft Lewis, *Pro Se*

**Plaintiff**

vs.

The District of Columbia Judiciary, Et al

**Defendants**

**RECEIVED**

APR 2 1 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Case No: **07**-**cv-697-rjl**

**MOTION FOR ENLARGEMENT OF TIME TO COMPLY WITH ORDER OF 12 MARCH 2008**

*Pursuant to F.R.C.P. 6(b)(2)*

**1.** Plaintiff Radcliffe B. Lewis hereby respectfully requests of this Court to allow him an additional 10 days commencing from 14 April 2008 to complete his response to the district of Columbia's motion to dismiss, and to allow Plaintiff to also provide additional information regarding the Federal Defendants, the United States, so as to befit joinder of the Department of Veterans Affairs and additional parties as indicated in his Amended Complaint.

*LCvR7 (m) Notice (If applicable)*

**2.** On 16 April 2008, at about 3:45 pm, Plaintiff attempted to contact counsels Whitaker, and Petteway, for the Federal Defendants and the District of Columbia respectively to seek consent for the filing of necessary motions accompanying the Amended Complaint, but the counsels were not available. Those motions include this intant motion for enlargement of time, a contemporaneously filed motion to amend, the necessary motion for joinder of additional parties, and particular injunctive motions.

**3.** Petteway, counsel for the District of Columbia previously granted consent back on about 15 March 2008 to the motion to amend.

**4.** Plaintiff now makes this request because in the process of preparing to properly respond to the District of Columbia's motion to dismiss plaintiff discovered that,

    **a.** Julia Leighton of the District of Columbia holds or held not les than three different positions in the District Columbia related to this each other regarding the material aspects of this case,

    **b.** that Rufus King is a contributing editor to the Standardized Civil Jury Instructions for the District of Columbia, and

    **c.** that the said Jury Instructions appear to give more credence to the DC Code than to the US Code, though they appear to be meant not just for the Article I courts of the District of Columbia, but for the Article III Federal Courts as well.

**5.** These developments in information affect the nature of the response to the District's motion to dismiss, both in terms of relevance, as well as framing the approprait claim. This latter consideration, framing the appropriate claims is of high relevance in relation to the Department of Veterans Affairs which Lewis also seek to enjoin as a defendant in this action, regardless of whether this Court so now grants, or, in the alternative, whether Plaintiff must open a new and separate action against Veterans Affairs.

**6.** In support of his Motion, plaintiff provides the here accompanying memorandum in support, and proposed order.

Respectfully submitted by:

Radcliffe B. Lewis, *Pro se,*
1901 15th Street, NW, #4
Washington, DC  20009

*F.R.C.P. 5 Notice*

I, Radcliffe B. Lewis hereby affirm that I caused a copy of this this Motion for Enlargement to Time to be served upon counsels for the defendants via the in-house mail delivery at DC Superior Court, 500 Indiana Avenue, NW, JM Level, Washington, DC 20008, as follows:

To counsel for the District of Columbia:

Kara Petteway, [#975541]

Assistant Attorney General

441 4th Street, N.W., 6th Floor, South, Washington, DC 20001

And to counsel for the Federal Defendants:

Claire Whitaker, Assistant United States Attorney

555 4th Street, NW, Suite E-4204, Washington, DC 20816

Sign:

4/18/08

TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Radcliffe Bancroft Lewis, *Pro Se*<br>        **Plaintiff**<br><br>vs.<br><br><br>The District of Columbia Judiciary, Et al<br>        ***Defendants*** | <u>**Case No: 1:0-cv-697-rjl**</u><br>**MOTION FOR ENLARGEMENT**<br>**OF TIME TO COMPLY WITH**<br>**ORDER OF 12 MARCH 2008** |

### MEMORANDUM IN SUPPORT
*Pursuant to F.R.C.P. 6(b)(2)*

### <u>Background</u>

**1.** On 12 March 2008 this Court ordered Plaintiff to respond to the District's motion to dismiss, and if he so chooses, to file an amended complaint that delineates the claims against the District of Columbia. The order mirrors a previous order by the Court regarding the motion to dismiss filed by the federal defendants. The Court subsequently dismissed the federal defendants, and Lewis filed an notice of appeal thereto, which was denied by the Court during the interval of time allotted to the Plaintiff to respond to the District's motion to dismiss.

### <u>Particulars</u>

**2.** While developing his response, Plaintiff observed the following: That the District's motion relies on *Bell Atlantic v Twombly, U.S. 127 S. CT. 1955, 1964-1965 (2007)*. The District continues on, asserting that plaintiff "must provide sufficient to information so that the district can determine what cause of action he is asserting" The District essentially asserts that this Court has no subject matter jurisdiction because Plaintiff fails to provide "basis for federal question jurisdiction..." and that "plaintiff fails to state claim upon which relief may be

granted". The District asserts that "the Court's analysis should begin and end with this issue – as did its decision with respect t to the federal defendant in this action."

**3.** A review of the federal defendants' motion indicates that the federal defendants also rely on *Twombly* and also indicate that the plaintiff should comply with Fed R. Civ. P. 8(a) "which requires a "short plain statement of the claim" for relief."

**4.** The District's pleading echoes verbatim the federal defendants' pleading stating "...plainiff's claims are so vague and ambiguous that...defendant cannot reasonably be required to frame a responsive pleading..."

### Findings

**5.** Upon performing research to properly address in earnest the District's construction relative to its piggy-backed motion to dismiss, Plaintiff uncovered several other billets held by Julia Leighton. These several other billets to wit: "Deputy Chief of Legal Services, **[Exhibit #2],** member of the D.C. Superior Court's Criminal Rules Advisory Committee, **[Exhibit #3],** and member of the D.C. Superior Court's CJA continuing Legal Education Committee, **[Exhibit #4],** appear to be very related to Leighton's several jump-around activities intersection plaintiff's relations with the District's CJA programs. **[Note Section 58 in Plaintiff's Amended Complaint.]**

**6.** Also because both sets of defendants lean so heavily on *Twombly* in their defense, upon review of that case, plaintiff discovered that *Twombly* addresses F.R.C.P. 8(a) interpretive to antitrust litigation, which requires that the "plaintiff must allege additional facts tending to exclude independent self-interested conduct as an explanation for parallel actions." ***Ibid.*** This "allege" however appears in practice to require more than a statement so alleging, but rather notable evidence interpretive to the exacting language of legal codes that antitrust activities are

underway by the defendants. Effectively then, it appears that the defendants demand the plaintiff to draft nothing less than a full code pleading, something that not even fully qualified attorneys have an easy time with.

7. The pro se plaintiff therefore undertook to affirm the particular accepted and standardized precedents that befit on the one hand his cause of action related to the District, that he was denied both his possessions in expectancy, to wit: the CJA investigator certification which he earned according to agreement, as well as the preservation of his due process rights, and the fundamental basis of his claim, that as a result of these denials he was injured by the omission of his credentials and the resultant lowering of his professional and other estimation in a large segment of the public, the very "criminal attorneys" and others to whom he must show face to earn a living.

8. This eventually lead plaintiff to the set of common jury instructions expected in trials held in the District of Columbia Circuit. Now unlike other federal jurisdictions such as the 9th and 11th Circuits, which have both standardized and model jury instructions, with at least the model instructions available on the internet, the jury instructions for the District of Columbia have no readily available model equivalent. Plaintiff eventually located two copies of the now privatized jury instructions, which though were developed by the Government of the District of Columbia, particularly the D.C. Bar, are now published by Lexis-Nexis for an amount in excess of $200 per purchase. The two copies readily available to the plaintiff are located at both the Martin Luther King Memorial Library and the Library of Congress. It was upon review of the latter of these that plaintiff discovered that the <u>Standardized Civil Jury Instructions for the District of Columbia</u> [2002 Revised Edition] Edited by Richard Stevens, is a publication to which "particularly Judge Rufus G. King, III" also contributed. **[Exhibit #5].**

**9.** Notably, the same edition of the jury instructions available at the Martin Luther King,

Jr, Library, have an significant number of pages missing, particularly regarding Section 20:

Fraudulent Misrepresentation; and upon review of that section at the Library of Congress, where

it is available, plaintiff found sections 20.06 and 20.07 to read as follows:

**"20.06 Plaintiff's Reliance Upon Own Investigation if a person to whom fraudulent misrepresentation is made decides to act...as a result of his or her own independent investigation and onto as a result of the misrepresentation, then the maker of the misrepresentation is not liable for any losses suffered. Cases: McNabb v Thomas, 1951 Gross v Sussex, 1993**

**...for want of detrimental reliance.**

**A party who "knows the facts," or who disbelieves or places no trust in a representation, cannot later claim reliance on the representation (Nader v Allegheny).**

**20.07 Reliance on Actionability of Misrepresentation**

**The maker of a fraudulent misrepresentation is not liable to a person who does not rely upon the truth of the representation, but who relies instead upon the expectation that the maker will have to pay damages for the false representation. Cases: Slaymaker v Westgate State Bank, 1977"**

**10.** Additionally there is no mention in the sub-headings of "civil rights" in jury

instructions, but rather "Human Rights" [Section 24] as it related to DC Code 1-1402.11. In fact

the bulk, if not all of the said jury instructions, though it may have cases from federal

jurisdictions[1] where statutes are concerned, appear to rely on the District of Columbia Code, not

the United States Code.

<u>Analysis</u>

**Impact on Plaintiff's Ability to State Claim**

**11.** The impact of the above noted revelations hamper the ability of the plaintiff to

appropriately frame his own amended complaint in response to the defendants. Even were the

plaintiff to split his cause of action and open up a new action against the Department of Veterans

Affairs in relation to the comparison with that which he perceived as outlined in both his

previous case (*Lewis v Wallace, 1:04-cv-0600*) and his tort claim notice against both the District

---

[1] Both Gross v Sussex, and Slaymaker v Westgate appear to fall under the jurisdictions of the 4th and 8th Circuits respectively.

of Columbia and the Department of Veterans Affairs (See Exhibit 2 of Amended Complaint) on the one hand, and the tri-governmental publication (Ending Chronic Homelessness)[2] on the other it does not appear that Lewis would be able to develop an applicable basis of claim  utilizing even the United States Constitution as a cause of action against that Department according to the standardized practice.

12. Plaintiff now directs the Court to recall section 25 of his Amended Complaint where he questions whether the Departments of Veterans Affairs, Housing, and Health question the credibility of Honorably Discharged.[3]  In a code pleading where the relief sought must match a distinctive set of possible relief and remedies according to code, it does not appear possible to assert, for example, particular rescission and particular damages based upon the local code in relation to a federal question without acquiescing to the authority of the local jurisdiction up over and above the jurisdiction of the United States Constitution unless there is careful application of the necessary United States Code or other federal statute.   Where the jury instructions are standardized to suggest there is no federal statute to consider, this appears to be the subversion of the Federal Question jurisdiction of his Court to the supplemental jurisdiction of the local courts.

13. By, design, without a vast array of precedent from which to rely, the pro se litigant is all but cut off from being able to comply with F.R.C.P.(8) in stating his claim upon which relief can be granted, while at the same time raising federal questions, especially in a case where the defendant asserts that the plaintiff seeks to levy civil charges in relation to the Sherman Anti Trust and other securities and trade acts.    Truly, the defendants' heavy reliance on *Twombly* does not comport with their acknowledgement that pro se litigants are provided "liberal pleading

---

[2] Cover Page of the ECH document found at http://aspe.hhs.gov/hsp/homelessness/strategies03/.

[3] Box 24 of Plaintiffs "Certificate of Release or Discharge From Active Duty (Form DD 214) reads "CHARACTER OF SERVICE...HONORABLE; Box 27 reads "REENTRY CODE RE-1".  Plaintiff asserts these classifications of him have been thoroughly impugned by the standing policies of the Departments of Veterans Affairs, Health and Housing.

standards. Without bickering over who has the better lot of privileges here it is sufficient for plaintiff to direct this Court to Erickson v. Pardus, S. Ct. 06-7317, (6/1/07) and the standard there. [Exhibit #6]. Plaintiff commences the certification process to be a CJA Investigator, and the District allowed him to commence taking cases. Over a year later the District still failed to certify him from the three-week program, but had him working. When the District finally commenced passing out cards evidencing certification, it refused Lewis, but not for a justifiable reason, but instead wrongfully terminated his access to the market of "criminal attorneys" resulting in a devastation of his income and his public perception before others. The District also denied him formal administrative redress of his grievances. In Erickson, specific facts at the commencement level are not necessary, only fare notice of what the claim is and the grounds upon which it rests. **[Note Exhibit #7: Treatise on the subject by Gregory P. Joseph.]** This so far plaintiff here has done.

**14.** Moreover, were the plaintiff to proceed without calling attention to this peculiarity of the unified bar of the District of Columbia, and the fact that an otherwise supposed judge of the local court, a legislative court, actually helps to write the standards that govern the federal  the judges of the federal and judicial courts when such judges are deliberating on the bench, hence practicing their specific judicial crafts, according to the jury instructions, the plaintiff would thereby lose all right to assert any claims regarding access to the federal courts to present and represent federal questions in relation to the subject matter for which he sued in the first place. This appears circular, a swindle scheme the further deprives the plaintiff access to the courts.

### An Additional Federal Question

*On Balance of Power and the United States Constitution, Article III*

**15.** But in so doing it only raises an additional question; where the first sentence of Article III of the United States Constitution reads:

*"The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish";*

Do the Article I legislative courts or the Council for the District of Columbia for that matter, have any business drafting laws that the Judicial Branch of the Federal Government must follow in exercising its judicial authority to address federal questions unhindered by supplemental jurisdiction as 28 US Code § 1331 intends, interpretive to the first sentence Article III of the United States Constitution

## Conclusion

**16.** Consequently Plaintiff is trapped. If he proceeds, he must state claim relying on the standardized jury instructions, or keeping close to it, unless he can find a feasible enough amount of precedents similar to his action suing a legislative court. If he does not proceed he does not have a case. But just as a commander on a ship's bridge would request his dissent be noted for the record when his captain makes a bad call, so now the plaintiff dissents the bad law of the District of Columbia both in unifying its bar and in subverting the federal question jurisdiction of this Court. Nevertheless he must proceed with his action, and levy for the relief sought against the defendants, properly enjoined or not, be it in this action, or subsequent action. He is not at luxury stay his hand.

**17.** Count VIII of the Amended Complaint may require the joinder of the most recently discovered identities of Julia Leighton. Counts X through XIII include allegations against the federal defendants, and others of the United States, and framing Rule 8 statements have been hindered as a result of the legal structure of the District of Columbia as described herein this

pleading.    Moreover, these latter counts require the appropriate declaratory, injunctive, and monitory relief, however plaintiff must be careful to so state without further running afoul of the bad law discovered,: the standardized jury instruction.  Plaintiff therefore needs a short span of a several more days to complete his response and to properly assert his claims, and include the necessary mandatory motions for joinders, and injunctions.  The additional time requested does not significantly affect the material aspects of this case beyond the continued harm plaintiff suffers.  Allowing Plaintiff to so submit is efficacious to this Court because it retains the whole, the cause of action instead of splintering it.

WHEREFORE in keeping with this Memorandum in Support, Plaintiff Radcliffe Lewis now respectfully request the additional time.

Respectfully submitted by:

_____
Radcliffe B. Lewis, *Pro se,*
1901 15th Street, NW, #4
Washington, DC  20009

## LIST OF EXHIBITS

1. LCvR7 (m) Consent Briefing Form indicating attempts to contact opposing counsels.

2. Report of the D.C. Superior Court CJA/CLE Committe indicating Julia Leighton as both the Deputy Chief of Legal Services of the D.C. Public Defender Service, as well as a member fo the CJA/CLE Committee.

3. D.C. Superior Court Administrative Orders 03-13 indicating Leighton as a member of the Criminal Rules Advisory Committee, (page 4 thereof).

4. D.C. Superior Court Administrative Orders 02-02 indicating Leighton as a member of the Committee on Continuing Legal Education for the Criminal Justice Act Attorneys, (page 4 thereof).

5. Introduction to the Standard Civil Jury Instructions for the District of Columbia acknowledging the contributions of Rufus King thereto.

6. First page fo Supreme Courts Opinion in *Erickson*.

7. Treatise on Twombly and the interpretation of the language of Rule 8(a)(2), etc.

*c 7 - 6 97*

Consent Briefing Fom

## Request

Where:        Order to respond and to file contemporaneously amended complaint, and
              Order denying appeal, and
              Amended Complaint filed

## Needs consent to Amend as Follows:

**Amend to:**    **Include the other offices held by J. Leighton**
                 **Include DVA**
**Enlarge time:** **To file the actual motion to amend and stipulate claims against DVa**
**Injunct to:**  **Grant matriculation**
                 **Allow for acquisition of DL/NDL and Passports w/o mooting case**
                 **Grant allowance of 100 k pending resolution**
                 **Grant from interference from DVA, S-M, other federal claimants**

Purpose:       60 b – Leighton – conflict of interest – number and nature of offices
               FTCA – DVA to prevent splitting of cause of action
               Prevent Undue Prejudice – allow Lewis to rescind continuation of stigma,
               And, if possible, recover market parity

Justification: Amd Complaint timely file, however
               60 b – discovery of legal structure of JI makes framing difficult
               60 b – that R. King is contributing editor
               60 b – that JI includes terrorem, yet
               Without continuance no access to courts

Alternatives:  King – Congress/ SC
               Leighton – Council, Congress
               Bar suit
               Case – Civil Rights Commission
               Fed – Related Action

Consent:       USA - Whitaker -    2/514-7137    y    n    time ___N/A___ *1543*
               DC -  Petteway -    2/442-6522    y    n    time ___N/A___
                                   *262-4518*                *N/A  1545*
                                                              *N/A  1548*

*Exhibit #1*

# REPORT

### OF THE

## SUPERIOR COURT CRIMINAL JUSTICE ACT
## CONTINUING LEGAL EDUCATION COMMITTEE

## (CJA/CLE COMMITTEE)

### FOR

## CHIEF JUDGE RUFUS G. KING, III

### DECEMBER 3, 2002

At your direction, a committee was formed in December 2001 to examine the issue of whether to institute a requirement of continuing legal education for U.S. and D.C. Panel attorneys practicing in the Superior Court of the District of Columbia pursuant to the Criminal Justice Act, D.C. Code, Sec. 11-2601 *et seq*, and, if so, the terms of such a requirement. Pursuant to your direction, the committee was composed of representatives from the Superior Court, the Public Defender Service, the Superior Court Trial Lawyers Association, the District of Columbia Association of Criminal Defense Lawyers and non-institutional panel attorneys. The original members were the following:

Judge Noel Anketell Kramer, Chair
Judge Harold Cushenberry, Vice Chair
Judge Rhonda Reid Winston
Judge Lynn Leibovitz
Magistrate Judge Ronald A. Goodbread
Betty Ballester, President, Superior Court Trial Lawyers
    Association
Richard Gilbert, President, D.C. Association of Criminal
    Defense Lawyers
Nina Masonson, Vice-President, D.C. Association of
    Criminal Defense Lawyers
A. Eduardo Balarezo
Janet Mitchell
Julia Leighton, then the Deputy Chief of Legal Services of
    the D.C. Public Defender Service
Jonathan Rapping, then the Training Director of the D.C.
    Public Defender Service



Subsequently added were:

Atiq R. Ahmed
Joseph Bernard
Martin Rosendorf

In deciding whether the Superior Court should adopt a requirement that attorneys appointed under the Criminal Justice Act to represent adult criminal defendants would be required to participate in a pre-determined number of continuing legal education hours, the committee examined the continuing legal education requirements of other federal, state, county and local jurisdictions, including all 50 states. Following discussion of the requirements of the other jurisdictions, Martin Rosendorf formulated a series of seven questions that the committee adopted as its structure for deciding what recommendations to make. Those questions are as follows:

1.  How many annual credit hours should be required?
2.  How should credits/hours be calculated?
3.  What courses should be accepted?
4.  Who should decide what courses are acceptable?
5.  Who should keep the records of compliance?
6.  How should the panel members report their course attendance?
7.  What should be the repercussions if a panel member is not in compliance?

After the discussions of the requirements, if any, of other jurisdictions, Mr. Rosendorf's questions were then circulated to all members of the committee. Responses were submitted by eleven members of the committee. Those responses were then compiled and circulated to the members. At the following meeting, the members of the committee were asked to vote on the answers to the questions. The results were as follows with respect to each question:

1.  Question: How many annual credit hours should be required?

    All members except one favored mandatory continuing legal education. The votes for the number of hours required were 7 votes for 8 hours, 1 vote for 6 hours, 1 vote for 9 hours and 1 vote for 15 hours.

    The committee concluded that this vote best supported a recommendation of 8 hours of mandatory continuing legal education to be completed within one year. The committee voted 7 to 2 against the ability to carry over credits from one year to another. It also reserved the possibility of requiring more CLE for newly practicing attorneys.

2. How should credits/hours be calculated?

The committee was unanimous in concluding that to accrue a credit hour of continuing legal education, a class must be at least 50 minutes long. Moreover, half-hour classes should not count toward the continuing legal education requirement.

The committee was also unanimous in concluding that programs put on by the following institutions should automatically qualify for continuing legal education credits provided the subject matter for an individual course falls within one of the subject matter categories that has been approved:

> D.C. Public Defender Service
> Superior Court Trial Lawyers' Association
> D.C. Association of Criminal Defense Lawyers
> National Association of Criminal Defense Lawyers
> Federal Defender Training Program
> National Institute for Trial Advocacy (NITA)

Moreover, the committee unanimously agreed that additional institutions might be added to this list over time.

3. What courses should be accepted?

In answering this question, the committee changed the question slightly to ask what subject areas should qualify for continuing legal education credits. The following list was unanimously agreed upon:

> Substantive criminal law, including traffic law
> Criminal procedure
> Evidence
> Trial advocacy
> Forensic issues which may arise in a criminal trial
> Ethics
> Immigration law
> Investigation
> Sentencing and diversion alternatives in D.C. Superior Court

The committee noted that complaint sessions or dialogue sessions should not count toward the credit hours. Rather, to qualify, the focus of the course should be on training and should be of a reasonable caliber and seriousness. After considerable discussion, the committee also concluded that, as of this time, there should not be any particular number of hours required in a particular subject area.

3

4.  Who should decide what courses are acceptable?

The committee unanimously concluded that a standing committee chosen by the Chief Judge should make these decisions. That committee should include two representatives from the Superior Court Trial Lawyers' Association, one each from the D.C. Association of Criminal Defense Attorneys and the Public Defender Service, and a judge of the Superior Court.

5.  Who should keep the records of compliance?

The committee unanimously concluded that the court should keep the records of compliance and administer that compliance.

6.  How will the panel members report their course attendance?

The committee unanimously concluded that the reporting of court attendance should be on a form that includes the date of the course, the title of the course, the course sponsor, the number of hours and a certification of compliance. The attorney should certify by his or her signature that the attorney has attended the course and that the information on the form is true and accurate.

7.  What should be the repercussions if a panel member is not in compliance?

The committee unanimously agreed that this system should be run based on a calendar year – that is, that the requirements should begin on January 1st of each year. Further, it agreed that a warning letter should be sent out three months before the end of the year, that is, by October 1st. It also concluded that except for newly practicing lawyers, the requirement to take 8 hours worth of CLE courses should not begin until the first full year after joining the U.S. or D.C. Panel. For those now members of the panel, the requirement would begin January 1, 2003.

If the CLE requirements have not been fulfilled in a timely fashion, an attorney will become ineligible for new appointments. An automatic grace period of three months into the following year will exist.

If an attorney is out of compliance for as long as a year, then the attorney loses his/her place on the panel and must re-apply. An automatic grace period of three months into the following year will exist.

Exceptions will be granted upon a showing that an attorney was in an extended trial of at least six months' duration, personally suffered from a serious and extended illness or otherwise suffered from an exceptional hardship.



Respectfully submitted,

CJA/CLE COMMITTEE

_____
Judge Noel Anketell Kramer, Chair

Judge Harold Cushenberry, Vice Chair
Judge Rhonda Reid Winston
Judge Lynn Leibovitz
Magistrate Judge Ronald A. Goodbread
Atiq R. Ahmed
A. Eduardo Balarezo
Betty Ballester
Joseph Bernard
Richard Gilbert
Julia Leighton
Nina Masonson
Janet Mitchell
Jonathan Rapping
Martin Rosendorf

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### ADMINISTRATIVE ORDER 03-13

#### (Committee Assignments)

The following are the committee assignments as revised May 7, 2003:

### ADVISORY COMMITTEE ON JUDICIAL CONDUCT

| | |
|---|---|
| Judge Campbell | **(Judge Steadman, Chair)** |
| Judge Winston | (Judge Glickman) |
| | (Judge Ruiz) |

### COMMITTEE ON AMENITIES & MISFORTUNES

**Judge Wright, Chair**
Judge Satterfield
Judge Shuker
Judge Winfield

### ART TRUST FUND

**Judge Lopez, Chair**
Judge Erik Christian
Sr. Judge Hamilton
Duane B. Delaney, Esq.
Mr. Dana Friend

### BENCH BOOK COMMITTEE

**Judge Bartnoff, Chair**
Judge Bayly
Judge Combs Greene
Sr. Judge Greene
Judge Long
Judge Lopez
Judge Turner
Judge Winfield
Magistrate Judge Flanagan
Magistrate Judge Goodbread
Magistrate Judge Stevenson

### BOND & COLLATERAL COMMITTEE

Exhibit #3

**Judge Alprin, Chair**
Judge Bowers
Judge Cushenberry
Judge Dixon
Judge Dorsey
Duane B. Delaney, Esq.

## BUILDING AND GROUNDS COMMITTEE

**Judge Bayly, Chair**
Judge Erik Christian
Judge Ross
Judge Weisberg
Anne Wicks
Duane B. Delaney, Esq.

## CIVIL RULES ADVISORY COMMITTEE

**Judge Graae Chair**
Judge Clark
Judge Dixon
Judge Zeldon
Magistrate Judge Coburn
Magistrate Judge Nooter
Deborah Taylor-Godwin, Esq.
David Luria, Esq.

Bruce H. Cherkis, Esq.
Jan D. Forsyth, Esq.
Geraldine R. Gennet, Esq.
John C. Greenhaugh, Esq.
Gerald E. Mitchell, Esq.
Mellie H. Nelson, Esq.
John Jude O'Donnell, Esq.
Diana M. Savit, Esq.
John E. Scheuermann, Esq.

### Civil Rules Advisory Subcommittee – L&T

**Judge Zeldon, Chair**
Judge Kravitz
Magistrate Judge Coburn
Sharon Taylor
David Luria, Esq.

*Doreen Haney, Esq.*

Kenneth J. Loewinger, Esq.
Ellen Scully, Esq.
Joanne Sgro, Esq.

## COURT INTERPRETERS COMMITTEE

**Judge Long, Chair**
Judge Bowers
Judge Diaz
Magistrate Judge Macaluso
Magistrate Judge Melendez
Duane B. Delaney, Esq.
Anne Wicks

## CRIMINAL JUSTICE ACT PANEL IMPLEMENTATION COMMITTEE

**Judge Kramer, Chair**
Judge Beck
Judge Combs Greene
Judge Cushenberry
Judge Gardner
Judge Jackson
Judge Josey-Herring
Judge Morin
Judge Retchin
Judge Richter
Judge Winston
Magistrate Judge Byrd
Magistrate Judge Goodbread

### Subcommittee on Investigators

**Judge Beck, Chair**
Judge Davis
Judge Mott
Judge Weisberg
Judge Winston

## *CJA – CCAN PLAN AND VOUCHER COMMITTEE*

**Judge Alprin, Chair**
*Magistrate Judge Dalton*
Judge Graae
Judge Morin
Judge Shuker

Judge Winston
Magistrate Judge Ringell


Betty M. Ballester, Esq.
Richard Gilbert, Esq.
James Roberts, Esq.

## CRIMINAL RULES ADVISORY COMMITTEE

**Judge Kramer, Chair**
Judge Campbell
Judge Canan
Judge Erik Christian
Judge Cushenberry
Judge Duncan-Peters
Judge Morin
Judge Motley
Judge Terrell
Judge Weisberg
Magistrate Judge Harnett
Magistrate Judge Lee
Dan Cipullo, Esq.
David Luria, Esq.

Thomas Abbenante, Esq.
Betty Ballester, Esq.
William J. Garber, Esq.
Clifford Keenan, Esq.
Julia Leighton, Esq.
John McDaniel, Esq.
Louis Michael Seidman, Esq.
Janice Shepherd, Esq.
Earl J. Silbert, Esq.
Bernard Siler, Esq.
Ron Sullivan, Esq.

## COMMITTEE ON CONTINUING LEGAL EDUCATION FOR CRIMINAL JUSTICE ACT ATTORNEYS

**Judge Kramer, Chair**
Judge Cushenberry, Vice Chair
Judge Leibovitz
Judge Winston
Magistrate Judge Goodbread

Eduardo Balarezo, Esq.
Betty Ballester, Esq.
Richard Gilbert, Esq.
Julia Leighton, Esq.
Nina Masonson, Esq.
Janet Mitchell, Esq.
Jonathan Rapping, Esq.

## DOMESTIC VIOLENCE ADVISORY COMMITTEE

**Judge Hedge, Chair**
Judge Bush
Judge Edwards
Judge Mott
Magistrate Judge Harnett

## EXTERNAL AFFAIRS COMMITTEE

**Judge Zeldon, Chair**
Judge Bartnoff
Judge Beck
Judge Blackburne-Rigsby
Judge Kravitz
Sr. Judge Mize
Judge Mott
Judge Satterfield
Judge Terrell
Magistrate Judge Harnett

## FAMILY COURT PANELS COMMITTEE

**Judge Beck, Co-Chair**
**Judge Johnson, Co-Chair**
Judge Blackburne-Rigsby
Judge Jackson
Judge Morin
Judge Motley
Judge Puig-Lugo
Judge Richter
Judge Winfield
Judge Winston
Magistrate Judge McKenna
Magistrate Judge Nooter

## FAMILY RULES ADVISORY COMMITTEE

Magistrate Judge Goodbread
Magistrate Judge N. Johnson
Anne Wicks
Duane Delaney, Esq.
Ken Foor
Division Directors

## **COMMITTEE ON THIRD PARTY CUSTODIANS**

**Judge Richter, Chair**
Judge Broderick
Judge Puig-Lugo
Judge Winfield
Magistrate Judge King


     **SO ORDERED.**


**BY THE COURT**

**May 7, 2003**

                                  _____/s/_____

                                    **Rufus G. King, III**
                                    **Chief Judge**


**Copies to:**

**All Judges and Magistrate Judges**
**Executive Officer**
**Clerk of the Court**
**Division Directors**
**Attorney Advisor**
**Law Librarian**
**Child and Family Services Agency**
**Counsel for Child Abuse & Neglect**

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## ADMINISTRATIVE ORDER 02-20

Assignments to standing Superior Court committees are set forth below and take effect immediately.

## ADVISORY COMMITTEE FOR SELECTION OF DUTY ATTORNEYS FOR D.C. AND TRAFFIC CASES

**Judge Kramer, Chair**
Judge Erik Christian
Judge Cushenberry
Judge Fisher
Judge Ross
Magistrate Judge Diaz
Magistrate Judge Goodbread
Magistrate Judge Ringell
Dan Cipullo, Esq., Director, Criminal Division

## ADVISORY COMMITTEE ON JUDICIAL CONDUCT

**Judge Burgess, Chair**      (Judge Steadman)
Judge Cushenberry            (Judge Glickman)
                             (Judge Ruiz)

## COMMITTEE ON AMENITIES & MISFORTUNES

**Judge Wright, Chair**
Judge Satterfield
Judge Shuker
Judge Winfield

## ART TRUST FUND

**Judge Lopez, Chair**
Judge Erik Christian
Sr. Judge Hamilton
Duane B, Delaney, Esq., Clerk of the Court
Dana Friend, Chief, Finance & Banking Branch, Budget & Finance Division

*Exhibit # 4*

## BENCHBOOK COMMITTEE

**Judge Bartnoff, Chair**
Judge Bayly
Judge Combs Greene
Sr. Judge Greene
Judge Long
Judge Lopez
Judge Turner
Judge Winfield
Magistrate Judge Flanagan
Magistrate Judge Stevenson
Magistrate Judge Goodbread

## BOND & COLLATERAL COMMITTEE

**Judge Alprin, Chair**
Judge Bowers
Judge Cushenberry
Judge Dixon
Judge Dorsey
Duane B. Delaney, Esq., Clerk of the Court

## BUILDING AND GROUNDS COMMITTEE

**Judge Bayly, Chair**
Judge Erik Christian
Judge Ross
Judge Weisberg
Anne Wicks, Executive Officer
Duane B. Delaney, Esq., Clerk of the Court
Joseph E. Sanchez, Jr., Administrative Officer

## CIVIL RULES ADVISORY COMMITTEE

**Judge Dixon, Chair**
Judge Graae
Judge Shuker
Judge Wynn
Magistrate Judge Coburn
Magistrate Judge Nooter

2

### Civil Rules Advisory Subcommittee – L&T

**Judge Graae, Chair**
Judge Kravitz
Judge Mize
Magistrate Judge Coburn

## COURT INTERPRETERS COMMITTEE

**Judge Long, Chair**
Judge Bowers
Judge Diaz
Duane B. Delaney, Esq., Clerk of the Court
Anne Wicks, Executive Officer
Magistrate Judge Macaluso
Magistrate Judge Melendez

## CRIMINAL JUSTICE ACT PANEL IMPLEMENTATION COMMITTEE

**Judge Kramer, Chair**
Judge Beck
Judge Cushenberry
Judge Gardner
Judge Combs Greene
Judge Josey Herring
Judge Jackson
Judge Morin
Judge Retchin
Judge Richter
Judge Winston
Magistrate Judge Byrd
Magistrate Judge Goodbread

### Subcommittee on Investigators

**Judge Beck, Chair**
Judge Weisberg
Judge Davis
Judge Mott
Judge Winston

## CRIMINAL JUSTICE ACT PLAN AND VOUCHER COMMITTEE

3

**Judge Alprin, Chair**
Judge Graae
Judge Morin
Judge Shuker
Judge Winston
Magistrate Judge Ringell
Betty M. Ballester, Esq., President, Superior Court Trial Lawyers' Association
Richard Gilbert, Esq., President, DC Association of Criminal Defense Lawyers
James Roberts, Esq., Program Director, Volunteer Advocates for Abused & Neglected Children

## CRIMINAL RULES ADVISORY COMMITTEE

**Judge Kramer, Chair**
Judge Abrecht
Judge Campbell
Judge Erik Christian
Judge Cushenberry
Judge Duncan-Peters
Judge Kramer
Judge Morin
Judge Motley
Judge Terrell
Judge Weisberg
Magistrate Judge Harnett
Magistrate Judge Lee

## COMMITTEE ON CONTINUING LEGAL EDUCATION FOR CRIMINAL JUSTICE ACT ATTORNEYS

**Judge Kramer, Chair**
Judge Cushenberry, Vice Chair
Judge Winston
Judge Leibovitz
Magistrate Judge Goodbread

Betty Ballester, Esq., President, Superior Court Trial Lawyers' Association
Richard Gilbert, Esq., President, DC Association of Criminal Defense Lawyers
Nina Masonson, Esq., Vice-President, DC Association of Criminal Defense Lawyers
Eduardo Balarezo, Esq., Criminal Justice Act Attorney
Janet Mitchell, Esq., Criminal Justice Act Attorney
Julia Leighton, Esq., Deputy Chief of Legal Services, Public Defender Service

4

## TECHNOLOGY AND AUTOMATION COMMITTEE

**Judge Hedge, Chair**
Judge Beck
Judge Dixon
Judge Graae
Judge Jackson
Judge Ross
Judge Shuker
Judge Winfield
Judge Steadman
Magistrate Judge Goodbread
Anne Wicks, Executive Officer
Duane Delaney, Esq., Clerk of the Court
Ken Foor, Director, Information & Technology Division
Division Directors

## COMMITTEE ON THIRD PARTY CUSTODIANS

**Judge Broderick**
Judge Puig-Lugo
Judge Richter
Judge Winfield
Magistrate Judge King

**BY THE COURT**                        _____/S/_____
**July 8, 2002**                        **Chief Judge Rufus King, III**

**Attachment**

**Copies to:**

**Judges**

9

**Magistrate Judges**
**Executive Officer**
**Clerk of the Court**
**Division Directors**
**Director, CCAN Office**
**Library**

# INTRODUCTION

This edition of the Standardized Civil Jury Instructions of the District of Columbia was two years in revision and publication. It represents not only recent comments, but relies on a foundation of model instructions and annual revisions dating back to 1941, when the "Blue Book" was first published. To undertake these revisions, the Civil Jury Instructions Committee ("the Committee") of the Young Lawyers Section of the District of Columbia Bar first established subcommittees for each area of law addressed in the instructions, then relied upon the members of both the plaintiff and defense bars practicing in those areas to serve on the subcommittees. Those subcommittees met and exchanged revisions to existing instructions and drafted proposed instructions. The subcommittees provided the sum of their analysis and input to the Committee. We in turn reviewed those materials and ultimately provided those materials to the judges for their comment and input. We again received changes and proposed instructions from the judiciary and have incorporated those materials into this final product. The collaborative effort was time-consuming, but hopefully resulted in a book of instructions which meets the needs of the judges and the lawyers before them.

This publication is the product of the extensive efforts of Richard W. Stevens, the editor, and the D.C. Bar and Bench. We owe a tremendous debt of gratitude to Mr. Stevens for his tireless efforts in bringing the current edition to press. He thoroughly reviewed past instructions for clarity and correctness. He reviewed and incorporated the Committee's changes and ensured that any proposed instruction comported with the law in the District of Columbia. He worked diligently on proposed draft instructions and the comments, to provide lawyers with an understanding of the derivation of the instruction and the rationale underlying it.

We also wish to thank the members of the individual subcommittees to the Committee, who utilized their daily courtroom experience to enhance these instructions and highlight the failings of the instructions in our earlier publications. Many of these participants worked on the project previously and still devote their time despite the fact that they are no longer "Young Lawyers." We thank the Young Lawyers Section of the Bar Association

(Rel.2–6/03 Pub.1275)

of the District of Columbia. We are particularly grateful to the current chair, Michael Garawski, as well as Narda Newby and Dwayne Tolliver past chairs, for continuing this project and supporting the committee in its completion.

We also acknowledge the contributions of the D.C. Superior Court Bench, particularly Judge Rufus G. King, III and Judge Herbert B. Dixon, Jr., who solicited and coordinated comments from the bench, which have been incorporated herein for the benefit of lawyers appearing in civil jury cases in the District of Columbia.

The Committee thanks the law offices of Carr Maloney, P.C., Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, and Thelen Reid & Priest LLP, who provided both resources and personnel to this endeavor.

Despite our best efforts, we expect that the jury instructions always can be improved by comment and criticism from the Bench and Bar. We welcome your input for future editions.

Angela Williams Russell
Wilson, Elser, Moskowitz,
Edelman & Dicker, LLP
Co-Chairperson
Civil Jury Instructions
Committee

Mary Margaret Utterback
Mary Thelen Reid & Priest LLP
Co-Chairperson
Civil Jury Instructions
Committee

April 2002

Cite as: 551 U. S. ___ (2007)                    1

Per Curiam

# SUPREME COURT OF THE UNITED STATES

## WILLIAM ERICKSON *v.* BARRY J. PARDUS ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

No. 06–7317.   Decided June 4, 2007

PER CURIAM.

Imprisoned by the State of Colorado and alleging violations of his Eighth and Fourteenth Amendment protections against cruel and unusual punishment, William Erickson, the petitioner in this Court, filed suit against prison officials in the United States District Court for the District of Colorado.  He alleged that a liver condition resulting from hepatitis C required a treatment program that officials had commenced but then wrongfully terminated, with life-threatening consequences.  Deeming these allegations, and others to be noted, to be "conclusory," the Court of Appeals for the Tenth Circuit affirmed the District Court's dismissal of petitioner's complaint.  198 Fed. Appx. 694, 698 (2006).  The holding departs in so stark a manner from the pleading standard mandated by the Federal Rules of Civil Procedure that we grant review.  We vacate the court's judgment and remand the case for further consideration.

Petitioner was incarcerated in the Limon Correctional Facility in Limon, Colorado, where respondents Barry Pardus and Dr. Anita Bloor were working as prison officials.  After Dr. Bloor removed petitioner from the hepatitis C treatment he had been receiving, petitioner sued under 42 U. S. C. §1983, complaining, *inter alia*, that Dr. Bloor had violated his Eighth Amendment rights by demonstrating deliberate indifference to his serious medical needs.  See, *e.g., Estelle* v. *Gamble,* 429 U. S. 97, 104–105 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton

*Exhibit #6*

# Supreme Court Rewrites Pleading Requirements

Gregory P. Joseph[*]

In 1957, the Supreme Court ruled that, under the Federal Rules of Civil Procedure, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). On May 21, 2007, the Supreme Court decided that "this famous observation has earned its retirement." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In the process, the Court revolutionized pleading rules, introducing twin requirements of fact-based pleading and plausibility.

*Bell Atlantic* was an antitrust action alleging an illegal conspiracy among the Baby Bells to inhibit the growth of third-party competitors and to refrain from competing among themselves. The District Court dismissed the complaint, but Second Circuit reversed, citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), for the proposition that "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," and observing that "[a]ntitrust actions are not among those exceptions." *Twombly v. Bell Atlantic Corp.*, 425 F.3d 99, 107 (2d Cir. 2005), *rev'd*, 2007 U.S. LEXIS 5901 (U.S. May 21, 2007).

In reversing the Second Circuit, the Supreme Court used sweeping language to impose a duty to plead facts pursuant to Rule 8(a)(2) — a duty that it did not, and logically could not, confine to the antitrust field:

---

[*]    Gregory P. Joseph Law Offices LLC, New York. Fellow, American College of Trial Lawyers; Chair, American Bar Association Section of Litigation (1997-98), and member, U.S. Judicial Conference Advisory Committee on the Federal Rules of Evidence (1993-99). Member, Editorial Board, MOORE'S FEDERAL PRACTICE (3d ed.). Author, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE (3d ed. Supp. 2007); CIVIL RICO: A DEFINITIVE GUIDE (2d ed. 2000); MODERN VISUAL EVIDENCE (Supp. 2007). © 2007 Gregory P. Joseph

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations..., a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level..., on the assumption that all the allegations in the complaint are true (even if doubtful in fact)....

127 S. Ct. at 1965 (citations omitted). The *Bell Atlantic* Court added that, while "detail[ed]" factual allegations are not required, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief," and this necessitates "some factual allegation in the complaint...." *Id.* at 1965 n.3.

In that light, consider a complaint that alleges, as its operative liability allegation, only that: "On _date_, at _place_, the defendant negligently drove a motor vehicle against the plaintiff." If one considers "negligently" to be a mere "label" or "conclusion," the complaint alleges nothing more than that there was a collision. That raises a possibility of relief, but nothing more. Is a mere possibility of relief sufficient? Given that the quoted allegation is taken verbatim from the restyled version of Form 11 to the Federal Rules of Civil Procedure (effective December 1, 2007), one would have thought it sufficient — particularly as restyled Rule 84 provides that "[t]he forms in the Appendix suffice under these rules." Certainly this allegation satisfied *Conley* because, if the possibility of a recovery exists, then by definition it does not "appear[] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

Under *Bell Atlantic*, however, merely pleading a possibility of recovery is not enough. The duty is to furnish factual "allegations plausibly suggesting (not merely consistent with)" an "entitlement to relief." 127 S. Ct. at 1966 (internal quotations omitted). *Bell Atlantic* calls this the "Rule 8 entitlement requirement" — the "threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'" *Id.*

2

The Second Circuit in *Bell Atlantic* had taken the view that: "The factual predicate that is pleaded does need to include conspiracy among the realm of *plausible possibilities*" (425 F.3d at 111 (emphasis added)).  The Supreme Court held that a mere-possibility standard does not satisfy the Rule 8 entitlement requirement because a *possibility* of relief is something less than a *plausibility* of relief.  *See* 127 S.Ct. at 1966 ("An allegation of parallel conduct ... gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitlement to relief.'").

The context of the Supreme Court's opinion is important.  *Bell Atlantic* was a complex antitrust class action — a very expensive case to litigate.  The Supreme Court cited *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) — its decision in a similarly expensive securities class action — to illuminate the "practical significance of the Rule 8 entitlement requirement."  The Court emphasized that, under *Dura*, "something beyond the mere possibility" of entitlement to relief (there, loss causation) must be alleged "lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value."  127 S.Ct. at 1966 (internal quotations omitted).  *Bell Atlantic* reiterates that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."  *Id.* at 1967 (citation and quotation omitted).

*Bell Atlantic* also rejected the notion "that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process."  It quoted an article by Judge Frank Easterbrook for the proposition that "[t]he portions of the Rules of Civil Procedure calling on judges to trim back excessive demands ... have been, and are doomed to be, hollow."

*Id.* at 1967 n.6. Therefore, the complexity and expense of the litigation, which motivated the Court's novel interpretation of Rule 8(a), may affect the level of factual detail required.

*Bell Atlantic* raises a variety of interesting issues.

**Information-and-Belief Pleading.** It is well-settled that "[p]leading 'upon information and belief' is sufficient to satisfy federal notice pleading under Fed.R.Civ.P. 8(a)." *Elektra Enter. Group v. Santangelo*, 2005 U.S. Dist. LEXIS 30388, at *7 (S.D.N.Y. Nov. 28, 2005), quoting *Steinbrecher v. Oswego Police Officer Dickey*, 138 F.Supp.2d 1103, 1109-1110 (N.D. Ill. 2001). Among other things, this is evidenced by Rule 11(b) contemplates information-and-belief pleading, providing that the signature on a pleading (among other things) constitutes a "certif[ication] ... to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that there is a basis for the allegations. *See* 2 MOORE'S FEDERAL PRACTICE § 8.04[3] (3d ed. 2007).

Information-and-belief pleading is not the same after *Bell Atlantic*. The complaint before the Supreme Court contained the allegation that: "Plaintiffs allege upon information and belief that [the Defendants] have entered into a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets and have agreed not to compete with one another and otherwise allocated customers and markets to one another." 127 S.Ct. at 1974 (Stevens, J., dissenting). This was rejected by the Supreme Court as inadequate because it did not satisfy the fact-based pleading and Rule 8 entitlement requirements. Therefore, invocation of the phrase "information and belief," without more, does not satisfy the fact-based pleading and Rule 8 entitlement requirements of *Bell Atlantic*.

In reconciling the tension between information-and-belief pleading and the Rule 8 entitlement requirement, it may be useful to look at the way information-and-belief pleading is

4

addressed in another context in which fact-based pleading is required — namely, decisions under Rule 9(b). In this setting, it is commonly held that, where allegations of fraud are based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief. *See, e.g., Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991) (pre-PSLRA). This case law developed to test whether the allegations furnishing the mandatory "particularity" had a basis in fact. That goal is not dissimilar to that facing a court now obligated to test whether the newly-mandated "plausible entitlement" standard *Bell Atlantic* has been satisfied. It presents an established approach toward determining whether mandatory allegations (be they "particularity" or "plausibility") are sufficiently rooted in fact.

This suggestion highlights the fact that *Bell Atlantic* can fairly be read as moving 8(a) jurisprudence closer to that of Rule 9(b). After *Bell Atlantic*, it is no longer accurate to say — as it was before — that "[s]uch supporting allegations seem to be unnecessary and inconsistent with the philosophy of the federal pleading rules" (5 Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1224 (Supp. 2006)). Arguably, *Bell Atlantic* is more stringent in its requirements than preexisting 9(b) case law, which relaxed the particularity rule when factual information is peculiarly within the defendant's knowledge or control (*see, e.g., Weiner v. Quaker Oats Co.*, 129 F.3d 310, 319 (3d Cir. 1997)), even though the pleading standard stated in Rule 9(b) is more stringent than that stated in Rule 8(a). Case law will have to sort through the extent to which this eminently practical doctrine survives.

**Conspiracy.** The issue in *Bell Atlantic* was conspiracy, and the Court ordered dismissal because "nothing contained in the complaint invests either the action or inaction [of the defendants] with a plausible suggestion of conspiracy." 127 S.Ct. at 1971. Therefore, it is safe to conclude that any action alleging conspiracy — *e.g.*, RICO, civil rights, civil conspiracy —

requires allegations of fact sufficient to satisfy this standard. What would suffice? District Judge Gerard E. Lynch's underlying opinion in *Bell Atlantic*, 313 F.Supp.2d 174 (S.D.N.Y. 2003), dismissed the complaint because plaintiffs failed to plead a "plus factor" that tended to exclude independent self-interested conduct as an explanation for the defendants' behavior — for example, "that the parallel behavior would have been against individual defendants' economic interests absent an agreement, or that defendants possessed a strong common motive to conspire." *Id.* at 179. This is as good starting point as any for alleging a viable conspiracy claim.

**Extent of Required Allegations of Fact.** The *Bell Atlantic* Court focused on the expense of litigating a massive antitrust class action; relied on its *Dura* decision, which focused on the expense of litigating a massive securities class action; and emphasized the inadequacy of judicial oversight of discovery to rein in discovery costs. Less complicated cases, like the auto accident discussed above, do not present the same issues, either in terms of complexity, expense or the perceived inadequacy of managerial judging. There is little to be gained by requiring the auto accident plaintiff to plead — instead of that "the defendant negligently drove a motor vehicle against the plaintiff" — that "the defendant was speeding and across the center line when he drove a motor vehicle against the plaintiff." The former is as plausible as the latter — discovery will determine who was at fault. Given the new *Bell Atlantic* test, however, and notwithstanding Rule 84, erring on the side of including more rather than fewer facts is the safer course.

***Erickson v. Pardus.*** Just how extensively does *Bell Atlantic* change the law of notice pleading? In a second pleading opinion issued per curiam in a *pro se* prisoner case on June 4,

2007, *Erickson v. Pardus,* 127 S. Ct. 2197 (2007), the Supreme Court sounded a permissive chord.

In his complaint, the prisoner plaintiff alleged that the physician provided by the prison had "removed [him] from [his] hepatitis C treatment" in violation of Corrections Department protocol, "thus endangering [his] life." He attached to the Complaint grievance forms in which he claimed that he was suffering from "continued damage to [his] liver" as a result of the failure to treat. The Complaint requested damages and an injunction requiring that the Corrections Department treat petitioner for hepatitis C "under the standards of the treatment [protocol] established by [the Department]."

The Tenth Circuit affirmed a magistrate judge's determination dismissing the complaint pursuant to Fed.R.Civ.P. 12(b)(2), holding that Complaint failed to set forth a factual showing of harm sufficiently to satisfy Rule 8(a)(2): "[I]n the proceedings before the district court and this court, plaintiff has made only conclusory allegations to the effect that he has suffered a cognizable independent harm as a result of his removal from the Interferon/Ribavirin treatment program" (127 S.Ct. at 2199).

The Supreme Court summarily vacated the Tenth Circuit decision, observing:

> Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. ----, ----, 127 S.Ct. 1955, --- L.Ed.2d ----, ---- - ---- (2007) (slip op., at 7-8) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp., supra,* at 1955, 127 S.Ct. 1955 (slip op., at 8-9) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

127 S.Ct. at 2200.

There appear to be three primary differences between *Bell Atlantic* and *Erickson*.

First, the Supreme Court stressed the *pro se* status of the plaintiff in *Erickson* — a far cry

from the highly sophisticated antitrust counsel in *Bell Atlantic*:

> The Court of Appeals' departure from the liberal pleading standards set forth by Rule 8(a)(2) is even more pronounced in this particular case because petitioner has been proceeding, from the litigation's outset, without counsel. A document filed pro se is " to be liberally construed," *Estelle [v. Gamble]*, 429 U.S. [97] at 106, 97 S.Ct. 285, and " a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *ibid.* (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) (" All pleadings shall be so construed as to do substantial justice" ).

*Erickson*, 127 S.Ct. at 2200.

It is possible that the Court is applying a more lenient (euphemism for "double") standard

in *pro se* cases, even as it explains why it is not.

Second, the pleading issue in *Erickson* was harm, not liability. Under Rule 8(a)(2), only

"a short and plain statement of the claim showing that the pleader is entitled to relief" is

required:

> The complaint stated that Dr. Bloor's decision to remove petitioner from his prescribed hepatitis C medication was " endangering [his] life." Petitioner's Complaint 2. It alleged this medication was withheld "shortly after" petitioner had commenced a treatment program that would take one year, that he was "still in need of treatment for this disease," and that the prison officials were in the meantime refusing to provide treatment. *Id.*, at 3, 4. This alone was enough to satisfy Rule 8(a)(2).

*Id.* at 2200.

In other words, "while "detail[ed]" factual allegations are not required, "Rule 8(a)(2) still

requires a 'showing,' rather than a blanket assertion, of entitlement to relief," and this

necessitates "some factual allegation in the complaint...." Bell Atlantic, 127 S.Ct. at 1965 n.3.

Third, *Erickson* was a simple case, *Bell Atlantic* a complicated antitrust action. What

more did the defendants in *Erickson* really need to know? Not much.

8

**Conclusion.** One could read *Twombly's* plausibility-in-pleading standard as requiring that the inference alleged in the complaint be *more persuasive* than alternate inferences (*see, e.g.,* 127 S.Ct. at 1966 (allegation insufficient where it "could just as well" give rise to inference of non-violative conduct) and at 1972 (allegation insufficient where "we have an obvious alternative explanation")). But, whatever Rule 8(a)(2) means, it cannot by any means require more than the strict scienter pleading requirement of the PSLRA, and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 127 S.Ct. 2499 (2007), decided on June 21, 2007, teaches that the PSLRA is satisfied by an inference of *equal plausibility.*

Consider a securities case alleging § 11, 10b-5 and common law fraud claims (thus, not a class action). The § 11 claim is governed by Rule 8(a)(2) because it doesn't require fraudulent intent, the 10b-5 claim is governed by the strict statutory scienter requirement of the PSLRA, and the common law fraud claim is governed by Rule 9(b). What is the difference in the pleading standards among the three of them? It is not possible to articulate those differences with any assurance.

601237

9

TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Radcliffe Bancroft Lewis, *Pro Se* | **Case No: 1:0-cv-697-rjl** |
| **Plaintiff** | **MOTION FOR ENLARGEMENT** |
| vs. | **OF TIME TO COMPLY WITH** |
| | **ORDER OF 12 MARCH 2008** |
| The District of Columbia Judiciary,  Et al | |
| **Defendants** | |

**Proposed Order**

Upon consideration of the plaintiff's motion for enlargement of time to comply with the order of 12 March 2008 and all opposition thereto,;

Plaintiff is Granted an additional 10 days commencing from April 14, 2008 and ending on April 24, 2008.  Plaintiff shall complete his response to the District of Columbia' motion to dismiss by including a motion to enjoin such additional parties as he deems necessary to properly present his claims, and set forth further supporting facts for each new party if such facts are not already set forth in his amended complaint.

In light of plaintiff's concerns regarding the standardized jury instructions of this Court, plaintiff is also allowed to comlete his statements on relief sought against the federal defendants, and other parties within the United States.

Sign: _____ Judge